Charles M. Lizza
William C. Baton
SAUL EWING ARNSTEIN & LEHR LLP
One Riverfront Plaza, Suite 1520
Newark, NJ 07102
(973) 286-6700
clizza@saul.com

*Attorneys for Defendant*
*PointsBet USA, Inc.*

Charles K. Verhoeven
(*pro hac vice* to be noticed)
QUINN EMANUEL URQUHART & SULLIVAN LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600
charlesverhoeven@quinnemanuel.com

Jared W. Newton
(*pro hac vice* to be noticed)
QUINN EMANUEL URQUHART & SULLIVAN LLP
1300 I Street NW, 9th Floor
Washington, DC 20005
(202) 538-8108
jarednewton@quinnemanuel.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BETEIRO, LLC,<br><br>  Plaintiff,<br><br>v.<br><br>POINTSBET USA, INC.,<br><br>  Defendant. | Civil Action No. 21-20155 (CPO)(SAK)<br><br>Motion Day:  March 7, 2022<br><br>(Filed Electronically) |

## POINTSBET'S MEMORANDUM OF LAW IN SUPPORT OF
## ITS MOTION TO DISMISS UNDER FEDERAL RULE OF PROCEDURE 12(B)(6)

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND ............................................................................... 2

    A.    The Complaint ......................................................................................... 2

    B.    Technology Overview .............................................................................. 3

    C.    The Asserted Patents ............................................................................... 5

        1.    Specification ................................................................................. 5

        2.    Claims .......................................................................................... 9

III.   LEGAL STANDARD........................................................................................ 10

    A.    Motions to Dismiss Under Rule 12(b)(6) ............................................. 10

    B.    Patent Eligibility Under 35 U.S.C. § 101.............................................. 11

    C.    Willful Infringement .............................................................................. 12

IV.   ARGUMENT ..................................................................................................... 13

    A.    The Complaint Should Be Dismissed In Its Entirety Because the Asserted Patents Are Ineligible Under § 101 ......................................... 13

        1.    Representative Claim Analysis ................................................... 13

        2.    *Alice* Step 1: The Claims Are Directed to an Abstract Idea .................... 16

        3.    Alice Step 2: The Claims Do Not Recite an Inventive Concept............... 23

    B.    Beteiro's Willful Infringement Allegations Should Be Dismissed....................... 26

V.    CONCLUSION................................................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018) ........................................................................... 11

*Affinity Labs of Texas, LLC v. Amazon.com, Inc.*,
    838 F.3d 1266 (Fed. Cir. 2016) ........................................................................... 15

*Affinity Labs of Texas, LLC v. DirectTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016) ........................................................................... 18

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014) ............................................................................... *passim*

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................ 11, 25, 26

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................... 11

*Bilski v. Kappos*,
    561 U.S. 593 (2010) ................................................................................ 13, 14, 24

*CG Tech. Dev., LLC v. FanDuel, Inc.*,
    442 F. Supp. 3d 840 (D. Del. 2020) ..................................................... *passim*

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019) ........................................................................... 25

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
    859 F.3d 1352 (Fed. Cir. 2017) ........................................................................... 11

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
    776 F.3d 1343 (Fed. Cir. 2014) .................................................................... 13, 16

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
    758 F.3d 1344 (Fed. Cir. 2014) ........................................................................... 20

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ........................................................... *passim*

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ............................................................ 19, 21, 22

*Erickson v. Pardus*,
    551 U.S. 89 (2007) ............................................................................................. 11

*Genetic Techs. Ltd. v. Merial L.L.C.*,
  818 F.3d 1369 (Fed. Cir. 2016) ........................................................................ 11

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  579 U.S. 93 (2016) .......................................................................................... 13

*Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*,
  222 F.3d 951 (Fed. Cir. 2000) .......................................................................... 11

*Intellectual Ventures I LLC v. Capital One Bank*,
  792 F.3d 1363 (Fed. Cir. 2015) .............................................................. 23, 24, 25

*Intellectual Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016) .................................................................. 16, 18

*Joao Bock Trans. Sys., LLC v. Jack Henry & Assocs., Inc.*,
  76 F. Supp. 3d 513 (D. Del. 2014), *aff'd*, 803 F.3d 667 (Fed. Cir. 2015) ........................ 18, 25

*Mayer v. Belichick*,
  605 F.3d 223 (3rd Cir. 2010) ............................................................................ 11

*Mayo Collab. Servs. v. Prometheus Labs., Inc.*,
  566 U.S. 66 (2012) ...................................................................................... 12, 23

*Mich. Motor Techs. LLC v. Volkswagen Aktiengesellschaft*,
  472 F. Supp. 3d 377 (E.D. Mich. 2020) ............................................................ 13, 27

*Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*,
  811 F.3d 1314-1315 (Fed. Cir. 2016) .................................................................. 18

*RDPA, LLC v. Geopath, Inc.*,
  2021 WL 2440700 (S.D.N.Y. Jun. 15, 2021) .............................................. 22, 24, 25

*SAP Amer., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018) ........................................................................ 11

*Slot Speaker Techs., Inc. v. Apple, Inc.*,
  2017 WL 4354999 (N.D. Cal. Sept. 29, 2017) .................................................... 27

*SmileDirectClub, LLC v. Candid Care Co.*,
  505 F. Supp. 3d 340, 350 (D. Del. 2020) ............................................................ 16

*SmarTEN LLC v. Samsung Elecs. Am., Inc.*,
  316 F. Supp. 3d 913 (E.D. Va. 2018) ................................................................ 22

*In re TLI Commc'ns LLC Patent Litig.*,
  823 F.3d 607 (Fed. Cir. 2016) ................................................................... *passim*

*Universal Secure Registry LLC v. Apple Inc.*,
  10 F.4th 1342 (Fed. Cir. 2021) ............................................................................ 20

*VLSI Tech. LLC v. Intel Corp.*,
  2019 WL 1349468 (D. Del. 2019) ........................................................................ 26

*ZapFraud, Inc. v. Barracuda Networks, Inc.*,
  528 F. Supp. 3d 247 (D. Del. 2021) ...................................................................... 26

**Statutory Authorities**

35 U.S.C. § 101 ............................................................................................... *passim*

35 U.S.C. § 284 ...................................................................................................... 13

**Rules and Regulations**

Rule 12(b)(6) ............................................................................................. 10, 11, 26

## I.       INTRODUCTION

The Patent Act enumerates certain statutory conditions that are required for patentability.
A threshold condition is that the claims of a patent are directed to eligible subject matter as
defined in 35 U.S.C. § 101.  Section 101 sets forth the statutory categories of eligible subject
matter, including machines, processes, and compositions of matter.  Excluded from that list are
mathematical formulas, laws of nature, and abstract ideas.  The Supreme Court and Federal
Circuit have long held that those types of fundamental concepts are not patent-eligible because
they are the basic tools or building blocks underlying human innovation.

The four patents asserted in this litigation present a straightforward case of patent-
ineligible subject matter in the form of an abstract idea.  Each patent is directed to the basic
concept of restricting a user's gambling activity based on his or her geographic location.  That
type of restriction has long existed in the gambling industry, with users prevented from placing
wagers if they are outside the confines of a casino, off-track betting site, or region where
gambling is legal.  It is thus the type of human activity that courts have routinely found abstract
under § 101.  *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014) (settling financial
obligations was an abstract idea); *CG Tech. Dev., LLC v. FanDuel, Inc.*, 442 F. Supp. 3d 840 (D.
Del. 2020) (using geographic information to customize gaming options was an abstract idea).

It is also not enough that the asserted patents implement the abstract idea using computer
and hardware components, like a processor, receiver, and global positioning device.  Using those
conventional components simply to implement the abstract idea—without any specific
improvement to the components' operation—cannot save the patents from ineligibility under
§ 101.  *See Alice*, 573 U.S. at 223 ("[T]he mere recitation of a generic computer cannot
transform a patent-ineligible abstract idea into a patent-eligible invention"); *CG Tech.*, 442 F.
Supp. 3d at 848 ("Determining the location of a mobile gaming device, determining the game

configuration associated with that location, and implementing that game configuration are each 'independently abstract ideas that use computers as tools.'").

Accordingly, the asserted patents are directed to ineligible subject matter under § 101, and Beteiro's complaint should be dismissed in its entirety with prejudice.  To the extent the complaint is not dismissed in its entirety, PointsBet moves to dismiss Beteiro's allegations of willful infringement.  Those allegations fail to adequately plead pre-suit knowledge of the asserted patents or egregious behavior on the part of PointsBet—each of which is an independent predicate to maintain allegations of willful infringement.

## II.    FACTUAL BACKGROUND

### A.    The Complaint

This lawsuit was filed on November 22, 2021, by Plaintiff Beteiro, LLC ("Beteiro") against Defendant PointsBet USA, Inc. ("PointsBet").  *See* Dkt. 1.  PointsBet, along with its parent corporation PointsBet Holdings, Ltd., is engaged in the business of online gaming.  Its principal products are a mobile application and website that offer customers the opportunity to wager on casino games and sporting events.  Beteiro is a non-practicing entity formed for the purpose of acquiring patents and filing lawsuits like the instant action.  On the same day Beteiro filed its lawsuit against PointsBet, it filed nearly identical lawsuits in this Judicial District against DraftKings Inc., BetMGM, LLC *et al.*, Hard Rock Tristate AC, LLC *et al.*, and Hillside New Jersey LLC, and has since filed another similar lawsuit against Betfair Interactive US LLC *et al*. *See* Civil Action Nos. 21-20148, 21-20156, 21-20157, 21-20158, and 22-577.

Beteiro's complaint includes four counts for patent infringement, one count each for U.S. Patent Nos. 10,043,341 (the "'341 Patent"), 10,147,266 (the "'266 Patent"), 10,255,755 (the "'755 Patent"), and 9,965,920 (the "'920 Patent") (the "Asserted Patents").  *See* Dkt. 1.  The complaint alleges that PointsBet infringes each Asserted Patent through the alleged making, use,

sale, and offer for sale of its mobile application and online sports book.  *Id*.  The complaint also

alleges that any future infringement is willful and seeks remedy in the form of damages and a

permanent injunction.  *Id*.

### B.      Technology Overview

The technology at issue relates to online gambling.  The business of gambling has existed

for centuries.  *See* Ex. 1, *Gambling and the Law – Update 1993* ("Rose") at 95.[1]  In its traditional

form, gambling involves a casino, sportsbook, racetrack, or other provider offering its customers

the opportunity to wager on the outcome of a table game, slot machine, sporting event, or other

activity.  *Id*. at 94.

Because gambling laws vary from one jurisdiction to another, gambling service providers

have traditionally placed geographic restrictions on customer activity.  *Id*. at 97, 102-04;  *see*

*also* Ex. 2, U.S. Patent No. 6,104,815 ("Alcorn") at 1:36-2:19.  As Alcorn explains, it was

important to know "both where the gambling occurs and who the parties (the host casino and the

player) to the gambling activity are since it establishes both the legality of the gambling

transactions and the jurisdiction for regulation and enforcement."  *Id*. at 2:9-13.  Thus, gambling

service providers took measures to ensure that customers were in an appropriate geographic

location—such as the confines of a casino, offtrack betting site, or region where gambling is

legal—when partaking in gambling activities.  *Id*. at 2:20-25 ("Today a player usually goes into a

casino and walks around placing bets and playing games in surroundings that have evolved over

many years. … Both parties have a sense of confidence that exposure of the transactions within

the limits of the law are under control."); 2:2-5 ("To avoid conflicts with the laws of a particular

---

[1]   Exhibits are attached to the accompanying declaration of Charles M. Lizza.

country, cruise ships that allow gambling are careful to be in international waters before they initiate game play").

With the rise of the internet and mobile computing in the late 1990s, it was apparent that online gambling presented a promising business opportunity. *See* Ex. 3, U.S. Patent Pub. No. 2002/0054088 ("Tanskanen") at [0004] ("Gambling is increasingly becoming a major feature of interactive networks."); *see also* Alcorn at 1:36-37 ("One type of transaction for which the Internet appears particularly attractive is on-line gambling."). It was also recognized, however, that online gambling raised a concern in terms of ensuring that users were in an appropriate geographic location when they accessed the Internet and attempted to place a bet. *Id.* at 2:49-55 ("In the world of the Internet, it is easy to disguise where the website computer executing an application, in this case gaming software, is located, and where the user, *i.e.*, the player sending the transaction to the application, can be found. This means that one can 'spoof' the computer at the gambling website into thinking that the remote player is in a venue where it is legal to play the game."). Thus, online gambling service providers sought to impose the same geographic restrictions that existed for traditional in-person gambling. *Id*. at 3:33-35 ("To enforce the regulations, it is thus axiomatic that the physical location of both the player and the gaming establishment must be known.").

Solutions to that problem were readily apparent, using technology that already existed. One solution was to locate computers for customer access in off-site facilities that were remote from the gaming service provider, but still within a sanctioned gambling jurisdiction. *See* Ex. 4, U.S. Patent No. 6,508,709 ("Karmarkar") at 8:21-28. Another solution relied on existing global positioning system ("GPS") devices to determine a user's precise location at the time the user engaged in gambling activity. *See* Alcorn at 3:57-60 ("Location of the remote user terminal, the

host server and universal time are determined using means for accessing the global positioning satellite (GPS) system.").  Based on data obtained from the GPS device, the gambling service provider could determine the user's location and decide whether to allow or deny the user's request to participate in gambling activity.  *Id.* at 7:13-20 ("[I]f it is determined that the user is valid, the server next determines from the latitude and longitude information received from the remote user whether or not the user is at a valid location.  If the indicated location is not valid, *i.e.*, it is in perhaps another county, or another state, or another country in which gaming is not permitted, the system returns a 'not authorized to play' signal.").

### C.    The Asserted Patents

The Asserted Patents were filed years after references like Alcorn, yet they propose the same basic concept of using GPS information to impose geographic restrictions on gambling activity.  *See* Dkt. 1-1 to 1-4.  An overview of the specification is provided below, followed by a description of the claims identified in Beteiro's complaint.

#### 1.    Specification

The Asserted Patents are part of the same family, meaning they stem from a common application and have the same specification.  The specification describes various aspects of online gaming, including a distributed system of computers that allow a user to place a bet over the Internet.  The system is illustrated in Figure 1, reproduced below:



**FIG. 1**

'341 Patent at Fig. 1 (annotated).

Three of the components depicted in Figure 1 are relevant to Beteiro's allegations in this case: the user communication device 20, the gaming facility computer 30, and the central processing computer 10. The user communication device 20 refers to a piece of equipment that a user operates to connect to the Internet and place wagers on sporting events. *Id*. at 24:21-45; 36:9-19. The device may be, for example, a personal computer or cellular telephone. *Id*. The gaming facility computer 30 refers to a computer that a gaming service provider operates to provide services to a user. *Id*. at 36:63-37:8. The gaming facility computer 30 may include a website that a user accesses from the communication device 20 over the Internet. *Id*. at 37:9-10. The user may then engage in gaming activity, such as online poker, blackjack, or sports betting. *Id*. at 38:9-14. The central processing computer 10 refers to a computer that the gaming service provider operates to process gaming activity. *Id*. at 52:42-55. For example, the central processing computer may be used to provide information about gaming events to a user or to process bets placed by the user. *Id*. at 52:56-53:15.

6

Using the arrangement of components shown in Figure 1, the Asserted Patents describe various gaming functionality that the service provider offers to users.  Two features are relevant to Beteiro's allegations.  The first feature allows the provider to generate notification messages about specific gaming events on which a wager may be placed.  *Id*. at 53:51-55, 57:19-31.  That functionality is illustrated in the flow diagrams shown in Figures 8 and 9:



*Id*. at Figs. 8A and 9A (annotated).

According to the specification, "[a]t step 801, the user can access the central processing computer 10 and/or the gaming facility computer 30 via the user communication device."  *Id*. at 53:51-53.  Then, "[a]t step 802, the user can enter information regarding a request for information regarding an available gaming event or gaming events."  *Id*. at 53:53-55.  In response to receiving the user request for information, "[a]t step 903, the central processing computer 10 and/or the gaming computer 30 can detect a gaming event or gaming events for which the user has desired to be notified."  *Id*. at 57:19-22.  Then, "[a]t step 904, upon detecting

a gaming event or gaming events for which the user desires to be notified, the respective central

processing computer 10 and/or the gaming facility computer 30 can generate a user notification

message and transmit same to the user communication device 20 in real-time and/or otherwise."

*Id*. at 57:26-31.

The second feature relates to how the gaming service provider processes a wager placed

by a user using his or her geographic location.  *Id*. at 79:56-80:4.  The functionality is illustrated

in Figure 20A, reproduced below:



*Id*. at Fig. 20A (annotated).

According to the patent specification, "In this manner, the respective central processing

computer 10 and/or gaming facility computer 30, at step 2002, can process the user's bet, wager,

and/or gaming activity…."  *Id*. at 80:32-36.  Then, "[a]t step 2003, the respective central

processing computer 10 and/or gaming facility computer 30 can determine if the remote gaming

8

activity and/or gambling activity is allowed by the state having jurisdiction over the remote

gaming activity and/or gambling activity." *Id*. at 80:37-41.  That step is performed by analyzing

position or location information received from a GPS unit on the user's device.  *Id*. at 80:10-24.

If the gaming facility computer determines that the user is in an acceptable geographic location,

it will process the bet as shown in step 2008.  *Id*. at 80:59-81:4.  If the computer determines the

user is outside of an acceptable location, it will decline the bet as shown in step 2004.  *Id*. at

80:42-50.

### 2. Claims

The Complaint alleges that PointsBet infringes one claim from each of the Asserted

Patents.  *See* Dkt. 1 at ¶¶ 76, 91, 104, and 117.  Each claim is directed to the abovementioned

features: a computer that (1) generates notifications about events upon which a wager can be

placed and (2) processes wagers based on a user's geographic location.  Claim 13 of the '341

Patent is representative and reproduced below:[2]

13. An apparatus, comprising:

[a] a computer, wherein the computer is specially programmed for processing
information for providing for a placement of a bet on or regarding a sporting
event, wherein the computer further comprises:

[b] a receiver, wherein the receiver receives a request to notify an individual
regarding the sporting event for or on which the bet can be placed;

[c] a memory, wherein the memory stores information regarding the request to
notify the individual regarding the sporting event; and

[d] a processor, wherein the processor is specially programmed to detect a posting
of information regarding the sporting event and to generate a notification message
regarding the sporting event, wherein the processor detects the posting of the
information regarding the sporting event, and further wherein the processor
generates the notification message regarding the sporting event;

---

[2]   The designations [a], [b], [c], etc. have been added to the claim in order to reference specific
limitations in Section IV below.

[e] wherein the computer, in response to a generating of the notification message by the processor, initiates a communication link with a first communication device, wherein the first communication device is associated with the individual, and further wherein the computer transmits the notification message to the first communication device,

[f] wherein the computer receives a bet message transmitted from the first communication device or from a second communication device, wherein the second communication device is associated with the individual, and further wherein the first communication device or the second communication device comprises a global positioning device, wherein the global positioning device determines a position or location of the first communication device or the second communication device,

[g] wherein the bet message contains information regarding a bet to be placed on or regarding the sporting event and information regarding the position or location of the first communication device or the second communication device at a time of a transmission of the bet message from the first communication device, or from the second communication device, to the computer,

[h] wherein the computer determines if the bet is allowed or disallowed using the information regarding the position or location of the first communication device or the second communication device and, if the bet is allowed, the computer processes information for placing the bet for or on behalf of the individual, or, if the bet is disallowed, the computer processes information for disallowing the bet.

'341 Patent at claim 13.

The identified claims of the other Asserted Patents recite similar functionality as discussed in Section IV.A.1 *infra*. *See* '266 Patent at claim 1, '755 Patent at claim 2, and '920 Patent at claim 16. Those claims are listed in Exhibit 5.

## III.    LEGAL STANDARD

### A.    Motions to Dismiss Under Rule 12(b)(6)

Under Rule 12(b)(6), a district court should dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In determining whether the complaint has stated a claim upon which

relief can be granted, the complaint's factual allegations are accepted as true.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  However, the Court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion."  *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016); *see also Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) ("[W]e have repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced.").  That is because patent eligibility is a question of law, and resolution is appropriate where, as here, there are no factual allegations in the complaint that create a contested underlying issue of fact.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018); *SAP Amer., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018).  Accordingly, the issue may be decided on undisputed facts from the claims, specification, prosecution history, and matter of public record.  *Id.*; *see also Mayer v. Belichick*, 605 F.3d 223, 230 (3rd Cir. 2010); *Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000).

**B.     Patent Eligibility Under 35 U.S.C. § 101**

Section 101 defines patent eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101.  The Supreme Court has "long held that this provision contains an important implicit exception:  Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 573 U.S. at 216.  The purpose of these carveouts is to protect the "basic tools of scientific and technological work."  *Mayo Collab. Servs. v. Prometheus Labs., Inc.,* 566 U.S. 66 (2012).

"[M]onopolization of those tools through the grant of a patent might tend to impede innovation more than it would tend to promote it, thereby thwarting the primary object of the patent laws." *Id*.

"The Supreme Court, setting up a two-stage framework, has held that a claim falls outside § 101 where (1) it is directed to a patent-ineligible concept, *i.e.*, a law of nature, natural phenomenon, or abstract idea, and (2), if so, the particular elements of the claim, considered both individually and as an ordered combination, do not add enough to transform the nature of the claim into a patent-eligible application." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (quotations omitted) (quoting *Alice*, 573 U.S. at 216). The first step of the *Alice* framework considers the "focus" of the claims and their "character as a whole." *Id*. If the focus and character is an abstract idea, then the analysis turns to the second step, which is to "search for an inventive concept," *i.e.*, an element or combination of elements that is sufficient to ensure the patent amounts to "significantly more" than the abstract idea itself. *Alice*, 573 U.S. at 217-18 (quotations omitted) (quoting *Mayo*, 566 U.S. at 73). The inventive concept must be more than "well-understood, routine, conventional activity." *Mayo*, 566 U.S. at 73. It cannot simply amount to implementing the abstract idea in a known technological environment. *Elec. Power*, 830 F.3d at 1354-55. Nor can it amount to implementing the abstract idea using conventional hardware and computers. *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016). The claim must include additional features to ensure that it is "more than a drafting effort designed to monopolize the abstract idea." *Alice*, 573 U.S. at 221 (quotations and formatting omitted) (quoting *Mayo*, 566 U.S. at 77).

## C.    Willful Infringement

In cases where infringement is found, "the court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. Enhanced damages are appropriate,

however, only in cases involving willful or bad-faith infringement.  *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016).  Willful infringement is marked by "egregious cases of culpable behavior" involving conduct that has been described as "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate."  *Id*. at 103-04, To state a claim for willful infringement, therefore, the complaint must allege facts sufficient to establish that the defendant had knowledge of the alleged infringement and acted with the requisite egregious conduct.  *See Mich. Motor Techs. LLC v. Volkswagen Aktiengesellschaft*, 472 F. Supp. 3d 377, 383-384 (E.D. Mich. 2020) (collecting cases).

## IV.   ARGUMENT

### A.   The Complaint Should Be Dismissed In Its Entirety Because the Asserted Patents Are Ineligible Under § 101

The Asserted Patents are invalid under 35 U.S.C. § 101 because they fail the two-step framework set forth in *Alice*.  This section first details why asserted claim 13 of the '341 Patent is representative of the other asserted claims.  It then addresses why the claimed invention is an abstract idea under *Alice* step one, and does not recite an inventive concept under *Alice* step two.

### 1.   Representative Claim Analysis

For cases involving multiple claims from related patents, courts routinely treat one of the claims as representative for purposes of deciding eligibility under § 101.  *See Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (finding that the district court correctly treated one claim as representative "because all the claims are 'substantially similar and linked to the same abstract idea.'") (quoting *Bilski v. Kappos*, 561 U.S.

593, 612 (2010)).  In this case, claim 13 of '341 Patent is representative of all the asserted claims identified in Beteiro's complaint.[3]

Claim 13 is directed to an apparatus comprising a computer programmed for processing betting information.  *See* '341 Patent at claim 13[a].  The computer includes data processing and network components, including a receiver, memory, and processor.  *Id.* at claim 13[b]-[d].  Using those components, the computer performs a series of operations.  First, the computer receives a request to notify an individual about a sporting event on which a wager may be placed.  *Id.* at claim 13[b].  Second, the computer stores information regarding the request to notify the user. *Id.* at claim 13[c].  Third, the computer detects information posted about the sporting event and, in response, generates a notification message for the individual about the sporting event.  *Id.* at claim 13[d].  Fourth, the computer initiates a communication link with a communication device associated with the individual.  *Id.* at claim 13[e].  Fifth, the computer receives a bet message from the individual's communication device.  *Id.* at claim 13[f].  The bet message includes information about a bet to be placed on the sporting event and information about the geographic position or location of the individual's communication device, taken from a global positioning device associated with the user.  *Id.* at claim 13[f]-[g].  Finally, the computer determines if the bet is allowed based on the position or location information, and processes the bet accordingly. *Id.* at claim 13[h].

The other asserted claims identified in Beteiro's complaint recite substantially the same features.  *See* '266 Patent at claim 1, '755 Patent at claim 2, and '920 Patent at claim 16.  Claim 1 of the '266 Patent is directed to a similar apparatus comprising a computer that performs the

---

[3]  Exhibit 5 includes a listing of the asserted claims with [a], [b], [c], etc. designations for ease of reference.

steps of detecting information, generating a notification message, receiving a bet message, and processing the bet using geographic information obtained from an individual's global positioning device. *See* '266 Patent at claim 1. Claim 1 of the '266 Patent is slightly different because the computer collects and processes information related to gaming activity, gambling activity, or sporting events, whereas claim 13 of the '341 Patent is directed to sporting events only. *Compare id*. at claim 1[a] *with* '341 Patent at claim 13[d]. The content of the information, however, does not impact the question of whether a claim is abstract, and thus does not prevent one claim from representing the other. *See Elec. Power*, 830 F.3d at 1353 ("Accordingly, we have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas.").

Claim 2 of the '755 Patent is directed to a method rather than an apparatus, but the claim language still recites the same steps of detecting information, generating a notification message, receiving a bet message, and processing the bet using geographic information obtained from an individual's global positioning device—all performed with a computer as recited in claim 13 of the '341 Patent. *See* '755 Patent at claim 2. Reciting an abstract idea in the form of a method versus an apparatus does not defeat the representative claim analysis for purposes of § 101. *See Affinity Labs of Texas, LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1267-68, n.2 (Fed. Cir. 2016) (finding asserted system claim 14 representative of asserted method claim 8).

Finally, claim 16 of the '920 Patent is directed to an apparatus that includes a processor, and receiver which perform the steps of detecting information, generating a notification message, receiving a bet message, and processing the bet using geographic information obtained from an individual's global positioning device. *See* '920 Patent at claim 16. The claim includes two additional features, neither of which renders the claim substantially different from claim 13 of

the '341 Patent.  First, the claim recites that the bet may be placed over the Internet or World Wide Web.  *Id.* at claim 16[a].  Implementing an abstract idea using the Internet versus some other medium, however, does not render it any less abstract.  *See SmileDirectClub, LLC v. Candid Care Co.*, 505 F. Supp. 3d 340, 350 (D. Del. 2020) ("Numerous cases have established that patents that simply take a standard business practice and describe how to conduct it over the internet or with modern information technology are directed to abstract ideas.").  Second, claim 16 of the '920 Patent includes a recording device and transmitter to obtain and transmit video or audio information about the claimed sporting event.  *See* '920 Patent at claim 16[b] and [d].  The addition of these conventional components, however, does not render the claim substantially different from claim 13 of the '341 Patent, and therefore does not preclude reliance on claim 13 as representative.  *See Content Extraction*, 776 F.3d at 1349 (additional limitations directed to conventional computer and scanner technology did not render the claims any more patentable than the representative claim).

Accordingly, asserted claim 13 of the '341 Patent is representative of the other asserted claims identified in Beteiro's complaint.

## 2.    *Alice* Step 1: The Claims Are Directed to an Abstract Idea

The first step of the *Alice* framework considers the focus of the asserted claims, or their character as a whole, to determine whether they are directed to an abstract idea. *See Elec. Power*, 830 F.3d at 1353.  Although there is no bright-line test to determine whether a claim is abstract, there are several common threads underlying such claims.

**First**, claims that use computer technology to automate steps a human could perform in the brick and mortar context are frequently found abstract at *Alice* step one.  *See Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313-14 (Fed. Cir. 2016) ("*IV I*").  In *IV I*, the claims were directed to an email filtering system to identify and remove files that might contain a

computer virus.  *Id*. at 1313.  The district court held that "receiving e-mail (and other data file) identifiers, characterizing e-mail based on the identifiers, and communicating the characterization—in other words, filtering files/e-mail—is an abstract idea," and the Federal Circuit agreed.  *Id*. at 1313.  The court reasoned that "it was long-prevalent practice for people receiving paper mail to look at an envelope and discard certain letters, without opening them, from sources from which they did not wish to receive mail based on characteristics of the mail." *Id*. at 1314.  It then held that "[c]haracterizing e-mail based on a known list of identifiers is no less abstract."  *Id*.

In this case, the asserted claims are directed to an apparatus or method that performs the steps of detecting information about a sporting event, notifying an individual about the sporting event, receiving a bet message related to the sporting event, and determining whether the bet is allowed based on geographic location information—steps that were long performed by humans in a brick and mortar setting.  For example, newspapers, magazines, and other subscription services have long notified customers about specific sporting events, including the date, time, and teams related to those events.  Traditional casinos, sportsbooks, and offtrack betting sites have likewise fielded requests for betting opportunities or odds related to specific events and provided those opportunities and odds to customers in response.  The same is true with respect to the steps of receiving and processing bets and wagers.  Casinos, sportsbooks, and offtrack sites have long received and processed betting slips, tickets, or verbal wagers from their customers.  And those same entities have imposed geographic restrictions on customer activity by, for example, refusing to allow customers to place bets if they are outside of a region where gambling is legal.  *See*, *e.g.*, Rose at 97, 102-104; Alcorn at 3:40-4:22.

These steps, when performed by humans, are abstract ideas that are not entitled to patent protection.  *See IV I*, 838 F.3d at 1314; *see also Affinity Labs of Texas, LLC v. DirectTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016) ("The practice of conveying regional content to out-of-region recipients has been employed by nearly every form of media that has a local distribution. It is not tied to any particular technology and can be implemented in myriad ways ranging from the low-tech, such as by mailing copies of a local newspaper to an out-of-state subscriber, to the high-tech, such as by using satellites to disseminate broadcasts of sporting events.").  And the fact that the asserted claims implement the steps using generic computer technology does not render them any less abstract.  *Id*. at 1260; *see also Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314-1315, 1324 (Fed. Cir. 2016) ("The series of steps covered by the asserted claims ... could all be performed by humans without a computer."); *Joao Bock Trans. Sys., LLC v. Jack Henry & Assocs., Inc.*, 76 F. Supp. 3d 513, 522 (D. Del. 2014), *aff'd*, 803 F.3d 667 (Fed. Cir. 2015) ("[T]he abstract idea embodied by the claim is a conventional business practice utilized by bankers or financial institutions in their dealings with individual account holders without the use of computers.").[4]

**Second**, along similar lines, claims directed to methods for "organizing human activity" are typically found abstract at *Alice* step one.  *Alice*, 573 U.S. at 220.  Applying that rationale, the District of Delaware recently dismissed a patent claim directed to location-based gaming technology, and the Federal Circuit affirmed.  *See CG Tech.*, 442 F. Supp. 3d at 846-48, *aff'd* 858 F. App'x at 363.  The claim at issue in *CG Tech.* was remarkably similar to the claims at

---

[4]  The patent at issue in *Joao Bock* has the same inventor as the Asserted Patents here.  *See* Dkt. 1 at ¶ 9.  In both cases, the patents amount to nothing more than long-established business practices that are implemented by computers rather than humans.  They are classic examples of subject matter that is ineligible under § 101.  *See IV I*, 838 F.3d at 1313-14.

issue here. *Id*. at 844.  It involved the steps of determining the location of a mobile gaming device, and changing the configuration of the game based on the user's location. *Id*.  The court explained that those steps were nothing more than a method of organizing human activity by dictating the gaming options presented to an individual based on his location. *Id*. at 847.  The same is true with respect to the asserted claims in this case, which simply dictate the betting activity in which an individual may participate by notifying the individual of specific sporting events and restricting his ability to bet on those events based on geographic location. *See* '341 Patent at claim 13.  Thus, the claims amount to an abstract idea of organizing human activity. *See CG Tech.*, 442 F. Supp. 3d at 847.[5]

**Third**, the Federal Circuit has explained that claims directed to collecting and analyzing information amount to an abstract idea under *Alice* step one. *See Elec. Power*, 830 F.3d at 1353-54.  The claims in *Elec. Power* described a computer-based method designed to receive data from multiple sources in a power grid and process the data to calculate an indicator of grid vulnerability. *Id*. at 1351-52.  Although the claims were limited to a particular technological environment—*i.e.*, power grid monitoring—the Federal Circuit determined that their focus and character as a whole was nevertheless directed to "collecting information, analyzing it, and displaying certain results." *Id*. at 1353.  The claims simply automated those steps through the use of conventional computer and network technology, which was insufficient to alter their fundamental character as an abstract idea. *Id*. at 1354.

---

[5]   In performing *Alice* step one, the Federal Circuit and Supreme Court "have found it sufficient to compare the claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).  The similarity of the Asserted Claims to those in *CG Tech.* supports a finding that they are directed to an abstract idea.

Here, the asserted claims are directed to the same type of abstract idea. *See* '341 Patent at claim 13. The claims describe collecting information such as a user request, bet message, and geographic location. *Id*. The claims then describe processing that information to generate notifications and determine whether a bet should be accepted or denied. *Id*. It makes no difference that the content of the information is specific to gambling or sporting events. *See Elec. Power*, 830 F.3d at 1353 ("Accordingly, we have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas."). It also does not matter that the claims use computer or hardware components to perform the collecting and processing steps. *Id*. at 1354-55. Neither feature changes the fundamental character of the claims, which is the abstract idea itself. *Id*.; *see also Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1353 (Fed. Cir. 2021) (claims directed to the "abstract idea of collecting and examining data to enable authentication" are unpatentable); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1350 (Fed. Cir. 2014) (claims directed to the abstract idea of "a process of organizing information through mathematical correlations" are unpatentable).

**Fourth**, the above discussion makes clear that the recitation of generic computer and networking components cannot render an otherwise abstract idea patentable under *Alice* step one. The *TLI* case is particularly instructive in this regard. *See* 823 F.3d at 612. There, the asserted claims described a method to record image data using a camera phone, transmitting the data to a server, and then storing it on the server. *See id*. at 610. The Federal Circuit held that the camera phone, computer server, and network components "merely provide a generic environment in which to carry out the abstract idea of classifying and storing digital images in an organized

manner." *Id.* at 611-12.  They did nothing to change the overall focus or character of the claims, which was the abstract steps of capturing, transmitting, and storing image data.  *Id.*

The same rationale applies here.  The asserted claims recite the use of various generic computer and network components—including a computer, processor, memory, receiver, communication link, communication device, and global positioning device—but only for the purpose of implementing the abstract idea of notifying a user about a sporting event, allowing the user to place a bet on the event, and ensuring the user in an acceptable geographic location before processing the bet.  *See* '341 Patent at claim 13.  The components are used "merely [as] a conduit for the abstract idea," and thus do not change the focus or overall character of the claims. *TLI*, 823 F.3d at 621.

Conversely, the asserted claims do not recite a specific improvement to the operation of a computer or other hardware device, which the Federal Circuit has distinguished from an abstract idea in certain instances.  *See Enfish*, 822 F.3d at 1335-36.  The *Enfish* claims described a novel self-referential database that allowed computers to store and retrieve data in a more flexible fashion than prior-art relational databases.  *Id.* at 1330-33.  The Federal Circuit held that, because the claimed database improved how the computer operated, it was not an abstract idea under *Alice* step one.  *Id.* at 1336.

In this case, however, the asserted claims do not purport to improve the operation of the recited computer or other hardware components.  *See* '341 Patent at claim 13.  For example, the claims do not describe any programming or database technology that allows the computer to operate more efficiently.  *Id.*  Nor do they propose any improvement to the global positioning device used to determine a user's location.  *Id.*  The claims simply use these components to implement the abstract idea of offering and processing betting activity.  *Id.*  Thus, they are

analogous to the claims at issue in *TLI* and *Elec. Power*—two cases the Federal Circuit distinguished from *Enfish* because they did not involve a specific improvement to a computer or other technology.  *See TLI*, 823 F.3d at 612; *Elec. Power*, 830 F.3d at 1354 ("The present case is different: the focus of the claims is not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools."); *see also RDPA, LLC v. Geopath, Inc.*, 2021 WL 2440700, at *12 (S.D.N.Y. Jun. 15, 2021) ("The Asserted Patents do not disclose any improved method for location tracking or for the GPS systems themselves; instead, they propose applying the data collected by GPS and location tracking systems to a particular problem.  Because the claims of the Asserted Patents are directed towards the analysis and collection of data, they accordingly are directed to an abstract idea under step one of the Alice test….").

The allegations in Beteiro's complaint fare no better.  The complaint alleges that "the inventions as claimed provided a technological solution to the technological problems arising in the online wagering context."  Dkt. 1 ¶ 31.  However, the complaint characterizes that problem as the need to ensure compliance with geographical restrictions on gaming activity, which simply goes back to the abstract idea itself.  *Id*.  The complaint does not identify any problem specific to existing computer or GPS technology, let alone explain how the alleged invention improves upon that technology.  *Id*.  Instead, "it is clear that the claims in issue are directed to asserted advances in the *uses* to which already existing technology, particularly conventional mobile computing devices with built-in GPS receivers…, can be put."  *SmarTEN LLC v. Samsung Elecs. Am., Inc.*, 316 F. Supp. 3d 913, 922 (E.D. Va. 2018), *aff'd*, 753 F. App'x 911 (Fed. Cir. 2019) (emphasis added).  Thus, the allegations in the complaint fail to distinguish the asserted claims from those found ineligible in *Alice*, *Elec. Power*, *TLI*, and *CG Techs*.

\* \* \*

Accordingly, the asserted claims are directed to an abstract idea under step one of the *Alice* framework.

### 3. Alice Step 2: The Claims Do Not Recite an Inventive Concept

The second step of the *Alice* test is to "search for an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217-18 (formatting omitted). Here, the claim elements, taken alone or together, do not describe an inventive concept sufficient to bring the alleged invention within the scope of § 101.

***First***, that the abstract idea is implemented using a computer and various conventional hardware components does not add an inventive concept. *See Alice*, 573 U.S. at 223 ("[T]he mere recitation of a generic computer cannot transform a patent-ineligible idea into a patent-eligible invention. Stating an abstract idea 'while adding the words "apply it" is not enough for patent eligibility.'") (quoting *Mayo*, 566 U.S. at 72); *Intellectual Ventures I LLC v. Capital One Bank*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) ("*IV 2*") ("A simple instruction to apply an abstract idea on a computer is not enough."). As discussed above, the asserted claims recite the use of various computer and hardware components, but only for the purpose of implementing the abstract idea of notifying a user about a sporting event, allowing the user to place a bet on the event, and ensuring the user is in an acceptable geographic location before processing the bet. *See* '341 Patent at claim 13. Those components cannot supply the inventive concept required at *Alice* step two. 573 U.S. at 226 ("Nearly every computer will include a 'communications controller' and a 'data storage unit' capable of performing the basic calculation, storage, and transmission functions required by the method claims. … As a result, none of the hardware recited by the system claims 'offers a meaningful limitation beyond generally linking the use of

the method to a particular technological environment, that is, implementation via computers.'") (quotations and formatting omitted) (quoting *Bilski*, 561 U.S. at 610-611).

*Second*, nothing in the claims of the Asserted Patents suggests that the computer and hardware components are used in a non-conventional manner. *See* '341 Patent at claim 13. The elements of the claimed computer—*i.e.*, the receiver, processor, and memory—are used in a conventional manner to receive, process, and store data. *Id*. at claim 13[a]-[d], [h]. The claimed communication link and communication device are likewise used in a conventional manner to send and receive data between computers. *Id*. at claim 13[e]-[f]. And the claimed global positioning device is used in the same conventional manner as any other GPS system to determine a user's location. *Id*. at claim 13[g]. Thus, the manner in which the components are used cannot supply an inventive concept at *Alice* step two. *See*, *e.g.*, *Elec. Power*, 830 F.3d at 1355 ("The claims at issue do not require any nonconventional computer, network, or display components"); *IV 2*, 792 F.3d at 1371 ("[T]he entry of data into a computer database … and the transmission of information derived from that entered data to a computer user, all through the use of conventional computer components, such as a database and processors, operating in a conventional manner … do not confer patent eligibility."); *CG Techs.*, 442 F. Supp. 3d at 849 ("In claim 6, the lookup table is also used in a conventional way; it is searched to find the game configuration associated with a location."); *RDPA*, 2021 WL 2440700, at *16 (S.D.N.Y. Jun. 15, 2021) ("A claim, like the one here, that involved only the use of data collected by a GPS system with no improvements to GPS technology itself is not patentable on its own."); *TLI*, 823 F.3d at 614 (collecting additional cases).

*Third*, Beteiro alleges that the claims of the Asserted Patents are inventive because they provide for "increased accessibility to wagering platforms," allow users to "access gambling

services remotely," provide "a means by which gambling platform providers could more effectively market various gaming activities," and allow for "increased scale over traditional person-to-person live wagering."  Dkt. 1 at ¶¶ 29-34.  All of those alleged improvements, however, result from automating the abstract idea with generic computer technology.  *Id*.  The improvements are therefore insufficient to provide an inventive concept at *Alice* step two. *Intellectual Ventures*, 792 F.3d at 1367 ("Nor, in addressing the second step of Alice, does claiming the improved speed or efficiency inherent with applying the abstract idea on a computer provide a sufficient inventive concept."); *see also ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 774-75 (Fed. Cir. 2019) ("ChargePoint points to the ability to operate charging stations remotely as solving a problem in the field. … This, again, merely mirrors the abstract idea itself and thus cannot supply an inventive concept."); *Joao Bock*, 76 F. Supp. 3d at 523 ("While the computer components do allow the abstract idea to be performed more quickly, this does not impose a meaningful limit on the scope of the claim.").

**Fourth**, the remaining allegations in Beteiro's complaint fare no better.  In several instances, Beteiro alleges that "the specific combinations of elements, as recited in the claims, were not conventional or routine at the time of the invention" and that "the claims of the Asserted Patents contain inventive concepts which transform the underlying non-abstract aspects of the claims into patent-eligible subject matter."  Dkt. 1 at ¶¶ 27-28.  Those allegations are conclusory, and thus the Court need not accept them as true in the context of a motion to dismiss. *Iqbal*, 556 U.S. at 678-79.  Beteiro also makes much of the fact that the Patent Examiner charged with reviewing the applications underlying the Asserted Patents found the claims compliant with § 101.  *See*, *e.g.*, Dkt. 1 at ¶ 17.  The Examiner's analysis, however, reveals that he did not apply the two-step framework set forth in *Alice*, which indisputably governs patent eligibility under

§ 101.  *Id.*  According to Beteiro, the Examiner found the claims eligible because they "explicitly require the use of a particular machine or processor" to perform steps such as transmitting a notification message or processing a bet using GPS information.  *Id.*  *Alice* and its progeny make clear, however, that the use of a computer or other conventional hardware to perform such routine steps cannot provide an inventive concept sufficient to render the claims patentable.  *See Alice*, 573 U.S. at 225-226.

* * *

Accordingly, the claims of the Asserted Patents fail to recite an inventive concept under *Alice* step two.  And because the claims fail both steps of the *Alice* test, they should be found invalid under 35 U.S.C. § 101 and this action should be dismissed with prejudice pursuant to Rule 12(b)(6).

### B.    Beteiro's Willful Infringement Allegations Should Be Dismissed

To the extent Beteiro's complaint is not dismissed in its entirety under § 101, it should be dismissed in part with respect to Beteiro's allegations of willful infringement.  Those allegations fail for two independent reasons.

*First*, the complaint fails to plead that PointsBet had pre-suit knowledge of the Asserted Patents or any alleged infringement.  *See* Dkt. 1 ¶¶ 86, 99, 112, 126.  Beteiro's allegations of actual notice are based solely on the filing of the complaint, *id.*, which courts in the Third Circuit have found insufficient to support an allegation of willful infringement.  *See ZapFraud, Inc. v. Barracuda Networks, Inc.,* 528 F. Supp. 3d 247, 252 (D. Del. 2021); *VLSI Tech. LLC v. Intel Corp.*, 2019 WL 1349468, at *2 (D. Del. 2019).

*Second*, the complaint fails to plead facts sufficient to demonstrate that PointsBet acted with the level of egregious conduct necessary to support an allegation of willful infringement.  *See* Dkt. 1 ¶¶ 86, 99, 112, 126.  Beteiro simply alleges that infringement "is and will be

necessarily willful and deliberate," without identifying any specific conduct or action on the part of PointsBet that could possibly be characterized as willful, wanton, bad-faith, or malicious. *Id*. Without pleading facts sufficient to establish that type of conduct, Beteiro's allegations of willful infringement should be dismissed. *See Mich. Motor Techs.*, 472 F. Supp. 3d at 383 ("[N]umerous district courts have concluded that an allegation of willful infringement without evidence of egregiousness is futile"); *Slot Speaker Techs., Inc. v. Apple, Inc.*, 2017 WL 4354999, at *2 (N.D. Cal. Sept. 29, 2017) ("Plaintiff provides no specific factual allegations about Defendant's subjective intent or details about the nature of Defendant's conduct to render a claim of willfulness plausible, and not merely possible.").

Accordingly, Beteiro's allegations of willful infringement should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

## V.     CONCLUSION

For the foregoing reasons, Defendant PointsBet requests that the Court dismiss this action in its entirety, with prejudice, under 35 U.S.C. § 101.  To the extent the Court does not dismiss the action in its entirety, PointsBet requests that the Court dismiss Plaintiff Beteiro's allegations of willful infringement with prejudice.

Dated:  February 9, 2022          Respectfully submitted,

                                  s/ Charles M. Lizza
                                  Charles M. Lizza
                                  William C. Baton
                                  SAUL EWING ARNSTEIN & LEHR LLP
                                  One Riverfront Plaza, Suite 1520
                                  Newark, NJ 07102
                                  (973) 286-6700
                                  clizza@saul.com

                                  Charles K. Verhoeven
                                  (*pro hac vice* to be noticed)
                                  QUINN EMANUEL URQUHART & SULLIVAN LLP
                                  50 California Street, 22nd Floor
                                  San Francisco, CA 94111
                                  (415) 875-6600
                                  charlesverhoeven@quinnemanuel.com

                                  Jared W. Newton
                                  (*pro hac vice* to be noticed)
                                  QUINN EMANUEL URQUHART & SULLIVAN LLP
                                  1300 I Street NW, 9th Floor
                                  Washington, DC 20005
                                  (202) 538-8108
                                  jarednewton@quinnemanuel.com

                                  *Attorneys for Defendant PointsBet USA, Inc.*